UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ZHI MING ZHANG, | ) | |
| Petitioner, | ) | Civ. No. |
| | ) | |
| -against- | ) | EMERGENCY PETITION |
| | ) | FOR WRIT OF HABEAS |
| KENNETH GENALO, New York City Field | ) | CORPUS AND |
| Office Director, U.S. Immigration and | ) | COMPLAINT FOR |
| Customs Enforcement; KRISTI NOEM, | ) | DECLARATIVE AND |
| U.S. Secretary of Homeland Security; | ) | INJUNCTIVE RELIEF |
| PAMELA BONDI, U.S. Attorney General, | ) | |
| Respondents. | ) | |

PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241

Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to

remedy Petitioner's unlawful detention by Respondents, as follows:

INTRODUCTION

1.      Petitioner Zhi Ming Zhang ("Mr. Zhang") challenges his unlawful detention by

the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE")

at 26 Federal Plaza, New York, New York. Petitioner is neither a flight risk nor a danger to the

community. He was detained by ICE on February 27, 2025 without or opportunity to be heard,

on the decision of an individual without authority to do so, without findings required by law, and

in violation of agency rules.

2.      Mr. Zhang, a citizen of the People's Republic of China, is subject to a deportation order entered on January 26, 1998. In 2012, ICE placed him on an Order of Supervision ("OSUP"), finding that he was neither a flight risk nor a danger to the community. The OSUP required Mr. Zhang to report to ICE on designated dates. The OSUP was routinely extended until 2025. From December 2017 through January 2025, he was instructed to report to the field office semi-annually. Mr. Zhang complied fully with the OSUP. When he reported as directed on January 27, 2025, ICE instructed him to report to the field office again on February 27, 2025. When he reported as instructed on February 27, 2025, ICE abruptly revoked the OSUP and arrested him. He was detained in New York City, then transferred to an ICE detention facility in Batavia, New York, and then to a sequence of ICE facilities in Texas.

3.      Mr. Zhang was a defendant in the matter of *United States v. Liang et al.*, Docket No. 1:18-cr-00419-BMC-3, a criminal matter involving trademark counterfeiting in the Eastern District of New York. He was arrested by U.S. Marshals in connection with this matter on August 6, 2018. The Hon. Brian M. Cogan ordered Mr. Zhang's release from custody pending trial on August 20, 2018, and he remained at liberty until his arrest by ICE on February 27, 2025.

4.      At the time of Mr. Zhang's arrest by ICE, his criminal matter was still pending and his presence was required in the Eastern District. On June 9, 2025, the U.S. Attorney's Office for the Eastern District filed a Petition for a Writ of Habeas Corpus Ad Prosequendum. The Hon. U.S. Magistrate Judge Robert Levy entered the Writ on the same day, and ICE released Mr. Zhang to the custody of U.S. Marshals on or about June 10, 2025.

5.      In the 13 years since ICE issued Mr. Zhang's OSUP, the agency was unable to obtain a travel document for Mr. Zhang from the People's Republic of China, which DHS has long designated as a "recalcitrant" country for its systematic refusal to accept its citizens whom the United States has ordered removed.

6.      From the time of his redetention on February 27, 2025 through his release to U.S. Marshals on or about June 10, 2025, ICE was unable to obtain a travel document from China and unable to effect his removal. No change in circumstances has occurred to suggest that ICE will be able to effect Mr. Zhang's removal to China now. Even if there had, Mr. Zhang is demonstrably not a flight risk or a danger to the community and his detention is unnecessary to effect his orderly departure from the United States.

7.      Yesterday the Hon. Brian M. Cogan of the U.S. District Court for the Eastern District of New York sentenced Mr. Zhang to time served, a substantial departure from the term set forth in the U.S. Sentencing Guidelines. This morning, Respondents took custody of Mr. Zhang and transported him from Brooklyn MDC to ICE's field office at 26 Federal Plaza, New York, New York, where he is now detained.

8.      Respondents' actions violate the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Immigration and Nationality Act and the regulations implementing it, the Administrative Procedures Act, and the *Accardi* doctrine, which compels administrative agencies to follow their own rules, procedures, and instructions.

PARTIES

9.      Petitioner Zhi Ming Zhang, a citizen of the People's Republic of China, has lived in the United States for 35 years. Prior to his detention on February 27, 2025, he was residing in New York City. He is currently detained at 26 Federal Plaza in New York, New York.

10.     Respondent Kenneth Genalo is named in his official capacity as Field Office Director for the New York City field office of ICE. In this capacity, Respondent Genalo is responsible for the administration and management of ICE Enforcement and Removal Operations ("ERO") in New York City and exercises control over Mr. Zhang's custody. He is therefore a legal custodian of Mr. Zhang.

11.     Respondent Kristi Noem is named in her official capacity as United States Secretary of Homeland Security. In this capacity, Respondent Noem is responsible for the administration of federal immigration law pursuant to 8 U.S.C. § 1103(a). She routinely transacts business in the Southern District of New York, and she is legally responsible for pursuing Mr. Zhang's detention and removal. As such, she is a legal custodian of Mr. Zhang.

12.     Respondent Pamela Bondi is named in her official capacity as United States Attorney General. In this capacity, Respondent Bondi is the most senior official in the U.S. Department of Justice and as such has the authority to interpret the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. She routinely transacts business in the Southern District of New York, and she is legally responsible for pursuing Mr. Zhang's detention and removal.

## JURISDICTION AND VENUE

13.     This action arises under the Fifth and Fourteenth Amendments to the United States Constitution.

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Art. I  9, cl. 2 of the United States Constitution, 28 U.S.C. § 1331, and 28 U.S.C. § 1361. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. 1651.

15.     The United States has waived sovereign immunity for this action for declaratory and injunctive relief against its agencies' officers, who are sued in their official capacities. *See* 5 U.S.C. § 702.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because Petitioner is detained in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.     There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention. Since Congress is silent on the issue, courts have applied a judicially created requirement that, generally, a petitioner must exhaust his administrative remedies before seeking federal court intervention. *See Monestime v. Reilly,* 704 F.Sup..2d 453, 456. (S.D.N.Y.2010) ("A habeas petitioner generally must exhaust administrative remedies before seeking federal court intervention.")

18.     However, courts may waive a judicially created exhaustion requirement where pursuing administrative remedies would be futile or where the agency has predetermined the issue before it. *Monestime,* 704 F.Supp.2d at 456 ("[E]xhaustion is not required where it would be futile or where the agency has predetermined the issue before it."); *see also Cave v. E. Meadow Union Free Sch. Sch. Dist.,* 514 F.3d 240, 249 (2d Cir. 2008) ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.").

19.     In this case, there is no administrative remedy for Mr. Zhang's unlawful detention, as he is subject to a final order of removal and there is no administrative mechanism through which Mr. Zhang may secure his release.

## STATEMENT OF FACTS

20.     Petitioner Zhi Ming Zhang is a citizen and national of the People's Republic of China who is in the custody of the U.S. Department of Homeland Security, Immigration and Customs Enforcement, and is currently detained at Metropolitan Detention Center in Brooklyn, New York.

21.     Mr. Zhang entered the United States without inspection on or about July 8, 1992. He submitted an application for asylum to the legacy Immigration and Naturalization Service ("INS") based on China's former family planning policies. On February 26, 1997 the INS served Mr. Zhang with an Order to Show Cause and Notice of Hearing to appear in the New York, New York Immigration Court. On January 26, 1998, the Immigration Court ordered Mr. Zhang removed to China, in absentia.

22.     On June 9, 2006 Mr. Zhang filed a motion to reopen his removal proceedings in the Immigration Court. The Court denied his motion, and Mr. Zhang appealed the denial to the Board of Immigration Appeals ("BIA"). The BIA dismissed the appeal on February 1, 2008. Mr. Zhang filed a second motion to reopen with the BIA on on October 15, 2007, and the BIA dismissed the motion on February 5, 2009.

23.     On April 12, 2012, ICE arrested Mr. Zhang at his residence in Staten Island, New York and processed him for removal. On April 19, 2012 the ICE field office director in Elizabeth, New Jersey filed a formal request with the Consul General of the People's Republic of China in New York, New York for a travel document to facilitate Mr. Zhang's removal. The Consulate did not provide the requested document, and ICE never obtained the documents necessary to repatriate Mr. Zhang.

24.     China is one of 13 countries whom DHS has designated as "recalcitrant" for its systematic refusal to accept its citizens whom the United States has ordered removed.

25.     On April 27, 2012 Mr. Zhang filed an application for a stay of removal with the ICE field office in New York, New York, based in part on his extensive equities in the United States. (Mr. Zhang is the father of two U.S.-citizen children, a dutiful taxpayer, and at the time of the submission, was the owner of a thriving business.)

26.     On May 11, 2012, ICE granted the stay request. Mr. Zhang was issued an Order of Supervision ("OSUP"), which indicates that he was placed under supervision "[b]ecause the [DHS] has not effected your deportation or removal during the period prescribed by law[.]" The OSUP set forth the conditions of Mr. Zhang's release, which included reporting to an ICE office in New Jersey and, later, in New York City.

27.    The OSUP was renewed by ICE on a routine basis from 2012 through January 27, 2025.

28.    On August 6, 2018, Mr. Zhang was arrested by U.S. Marshals in connection with trademark counterfeiting charges in the U.S. District Court for the Eastern District of New York in the matter of *United States v. Liang et al.*, Docket No. 1:18-cr-00419-BMC-3. The Hon. Brian M. Cogan ordered Mr. Zhang's release from custody pending trial on August 20, 2018, and he remained at liberty until his arrest by ICE.

29.    During the 13 years in which Mr. Zhang was subject to ICE supervision, he complied fully the agency's reporting instructions and reported to an ICE field office a total of 20 times. On January 27, 2025, ICE instructed Mr. Zhang to report again 30 days later. He was given no notice that he would be redetained or that ICE intended to effect his removal.

30.    On February 27, 2025 Mr. Zhang reported as instructed to the ICE field office at 26 Federal Plaza in Manhattan. He met with an official of ICE ERO, who informed him that he was being detained, handcuffed him, and removed his personal property. Upon information and belief, the official gave Mr. Zhang no specific explanation of why the agency was revoking his OSUP and why he was being detained after 13 years at liberty. Mr. Zhang was given no notice or opportunity to be heard. Upon information and belief, the official responsible for revoking Mr. Zhang's OSUP did not first refer the matter to the ICE Executive Associate Director, did not make findings that revocation was in the public interest and that circumstances did not reasonably permit referral to the Executive Associate director, and the official had not been delegated the authority to revoke an OSUP.

31.     Mr. Zhang was briefly detained at 26 Federal Plaza and then transferred to ICE's detention facility in Batavia, New York.

32.     On or about March 9, 2025, ICE transferred Mr. Zhang to IAH Polk Adult Detention Facility in West Livingston, Texas. About one week later, he was transferred to ICE's Joe Corley Processing Center in Conroe, Texas.

32.     At the time of his arrest by ICE, Mr. Zhang had been scheduled for sentencing on June 18, 2025 in the Eastern District. By the first week of June 2025, Mr. Zhang remained in ICE custody in Texas and would be unable to attend the hearing.

33.     On June 9, 2025 the U.S. Attorney's Office for the Eastern District filed a Petition for a Writ of Habeas Corpus Ad Prosequendum. The U.S. Magistrate Court for the Eastern District of New York entered the Writ the same day, and ICE released Mr. Zhang to the custody of U.S. Marshals on or about June 10, 2025.

34.     Mr. Zhang's sentencing was rescheduled for August 7, 2025  and again for October 22, 2025. On that date, the sentencing hearing was conducted by the Hon. Brian M. Cogan, who imposed a sentence of time served, a significant departure from the term set forth in the U.S. Sentencing Guidelines. However, ICE had lodged a detainer for Mr. Zhang. In accordance with the detainer, U.S. Marshals held Mr. Zhang until ICE officials took him into custody on October 23, 2025.

35.     Mr. Zhang is once again in ICE custody at 26 Federal Plaza. Based on past experience as set forth above, it is more likely than not that ICE will soon transfer Mr. Zhang to a facility outside the Southern District of New York.

36.     Upon information and belief, ICE has not secured travel documents necessary for Mr. Zhang's removal as of this writing.

LEGAL FRAMEWORK

37.     "The Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Id.* at 690 (2001).

38.     Due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention: to mitigate the risks of danger to the community and to prevent flight. *Id.;* *Demore v. Kim*, 538 U.S. 510, 528 (2003). Thus, to withstand constitutional scrutiny, the nature and duration of immigration detention bust be reasonably related to those purposes. A restraint on liberty such as the revocation of an order of supervision is only permissible if it serves a "legitimate nonpunitive objective." *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997). To determine whether immigration detention violates due process, courts apply the familiar *Mathews v. Eldridge* balancing test and weigh the private liberty interest at stake, the risk of erroneous deprivation, and the probable value of additional safeguards, as well as the government's interest.

424 U.S. 319, 335 (1976). "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* At 333.

39.      A non-citizen with a final order of removal "who is not removed within the [90-day] removal period [. . .] shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (titled "Supervision After 90-Day Period").

40.      A non-citizen may only be detained past the 90-day removal period following a removal order if found to be "a risk to the community or unlikely to comply with the order of removal" or if the order of removal was on specified grounds. *Id.* § 1231(a)(6).

41.      But even where initial detention past the 90-day removal period is authorized, if "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6)]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances [.]" *Zadvydas v. Davis*, 533 U.S. at 699.

42.      Regulations purport to give additional reasons beyond those listed at § 1231(a)(6) for which an OSUP may be revoked and a non-citizen redetained past the removal period: "(1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order [. . .] or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Because "[r]egulations cannot circumvent the plain text of the statute[,]" courts question whether these regulations are ultra vires of statutory authority. *See e.g. You v. Nielsen*, 321 F.Supp. 3d. 451, 463 (S.D.N.Y. 2018) (comparing regulations to 8 U.S.C. § 1231(a)(6), which authorizes

detention past the removal period only if person is a risk to the community, unlikely to comply with the order of removal, or was ordered removed on specific grounds).

43.    It is clear that regulations permit only certain officials to revoke an OSUP: the ICE Executive Associate Director, a field office director, or an official "delegated to the function or authority [. . .] for a particular geographic district, region, or area." *Ceesay v. Kurzdorfer*, 781 F.Supp. 3d. 137, 161 (W.D.N.Y. 2025) (citing 8 C.F.R. §§ 1.2, 241.4(l)(2) and explaining that the Homeland Security Act of 2002 renamed the position titles listed in § 241.4.) If the field office director or a delegated official intend to revoke an OSUP, they must first make findings that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]." 8 C.F.R. § 241.4(l)(2). For a delegated official to have the authority to revoke an OSUP, the delegation must explicitly say so. *See Ceesay v. Kurzdorfer*, 781 F.Supp. 3d. at 161 (finding that a delegation order that "refers only to a limited set of powers under part 241 that do not include the power to revoke release" is insufficient to grant authority to revoke an OSUP).

44.    Upon revocation of an OSUP, the agency must give a non-citizen notice of the reasons for revocation and a prompt interview to respond. 8 C.F.R. § 241(l)(1).

45.    The Administrative Procedures Act ("APA") authorizes judicial review of final agency action. 5 U.S.C. § 704.

46.    Final agency actions are those that "mark the consummation of the agency's decision-making process" and "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear,* 520 U.S. 154, 178 (1998).

47.    ICE's revocation of an OSUP is a final agency action subject to this Court's review.

48.    The revocation of Mr. Zhang's OSUP marked the consummation of ICE's decision-making process regarding his custody.

49.    The revocation was an action by which rights or obligations have been determined or from which legal consequences flowed because it led ICE to detain Mr. Zhang in violation of his rights under the Constitution and under statute and regulation.

50.    Under the *Accardi* doctrine, a foundational principle of administrative law, agencies must follow their own procedures, rules, and instructions. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268 (1954) (setting aside an order of deportation where the BIA failed to follow procedures governing deportation proceedings); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures [. . .] even where the internal procedures are possibly more rigorous than otherwise would be required.").

51.    *Accardi* is not "limited to rules attaining the status of formal regulations." *Montilla v. INS,* 926 F.2d 162, 167 (2d Cir. 1991). Courts must also reverse agency action for violation of unpublished rules and instructions to agency officials. *See Morton v. Ruiz*, 415 U.S. 235 (1974) (affirming reversal of agency denial of public assistance made in violation of internal agency manual); *U.S. v. Heffner,* 420 F.2d 809, 812 (4th Cir. 1969) (under *Accardi,* reversing decision to admit evidence obtained by IRS agents for violating instructions on investigating tax fraud).

## FIRST CLAIM FOR RELIEF
Violation of the Fifth Amendment of the U.S. Constitution
Substantive Due Process

52.     Mr. Zhang realleges all paragraphs above as if fully set forth here.

53.     When ICE issued Mr. Zhang's OSUP in 2012, it determined that he is neither a danger to the community nor a flight risk.

54.     The OSUP expressly indicates that ICE was releasing Mr. Zhang because it was unable to effect his deportation during the removal period.

55.     When Respondents Genalo and Noem revoked Mr. Zhang's OSUP, ICE had not secured a travel document for his removal, and there was no change in circumstances to warrant revocation of the OSUP.

56.     Mr. Zhang's detention therefore does not bear a reasonable relationship to the two purposes of immigration detention permitted by regulation: preventing danger to the community or flight prior to removal.

57.     Because Respondents had no legitimate, non-punitive purpose in revoking Mr. Zhang's OSUP, his detention violates substantive due process under the Fifth Amendment to the U.S. Constitution.

SECOND CLAIM FOR RELIEF
Violation of the Fifth Amendment of the U.S. Constitution
Procedural Due Process

58.     Mr. Zhang realleges all paragraphs above as if fully set forth here.

59.     *Mathews v. Eldridge*, 424 U.S. at 333, instructs courts to balance three factors to determine whether procedural due process is satisfied: (1) the private interest at issue; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including fiscal and administrative burdens that additional or substitute procedural requirements entail.

60.     The first factor, the private interest at issue, favors Mr. Zhang."Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. at 690.

61.     The second factor, the risk of erroneous deprivation of liberty and the probable value of procedural safeguards, favors Mr. Zhang. To safeguard against erroneous deprivations of liberty, Title 8 specifies the limited number of reasons that an OSUP can be revoked. Regulations specify who may lawfully revoke the order and the procedures that must be followed when doing so, including giving notice and an opportunity to be heard. Respondents violated those laws here, leaving the risk of erroneous deprivation of liberty not just high, but certain. Requiring Respondents to give notice and an opportunity to respond prior to revoking an order of supervision is of great value because it reduces the probability of needless detention of a person, like Mr. Zhang, who is neither dangerous nor a flight risk.

62.     The third factor, the government's interest, also favors Petitioner. When the government ignores law that ensures notice and an opportunity to respond to a person at risk of revocation of an order of supervision, it is more likely to waste limited financial and administrative resources on unnecessary detention of people who are neither flight risks nor dangerous. This waste undermines the efficiency of the immigration system. Because the government must also spend resources defending against a habeas corpus petition in federal court to compel Respondents to comply with law, requiring Respondents to instead provide notice and a meaningful opportunity to respond prior to revoking an OSUP reduces fiscal and administrative burdens on the government.

63.     For these reasons, revoking Mr. Zhang's OSUP without providing notice and a meaningful opportunity to respond violated procedural due process under the Fifth Amendment to the U.S. Constitution.

THIRD CLAIM FOR RELIEF
Violation of Administrative Procedure Act

64.     Mr. Zhang realleges all paragraphs above as if fully set forth here.

65.     Under the APA, a court shall "hold unlawful and set aside agency action [. . .] found to be [. . .] not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A), (B).

66.     The APA's reference to "law" in the phrase "not in accordance with law [. . .] means, of course, *any* law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003).

67.     Respondents Genalo and Noem's revocation of Petitioner's order of supervision was contrary to the agency's constitutional power under the Fifth Amendment's Due Process Clause, as explained above.

68.     The revocation was also not in accordance with the INA and implementing regulations governing who may lawfully revoke an order of supervision and under what circumstances, as discussed in the Statutory Framework section above.

69.     Mr. Zhang's OSUP was not revoked by the ICE Executive Associate Director. The officer who revoked the order did not first make findings that revocation was in the public interest and that circumstances did not reasonably permit referral to the Executive Associate Director. Nor had the official been delegated authority to revoke an order of supervision.

70.     Before revoking the order, DHS / ICE did not make findings that Mr. Zhang is dangerous or unlikely to comply with a removal order, as required by statute.

71.     Even assuming that regulations purporting to offer additional justifications for revocation of an order of supervision are not ultra vires, respondents did not comply with them. DHS / ICE could not make findings that Mr. Zhang's conduct indicated release would no longer be appropriate, because there was no change in circumstances since Mr. Zhang's previous several report dates that would warrant such a conclusion. Nor could Respondents make findings that the purposes of release had been served or that it was appropriate to enforce a removal order, because it had yet to make final arrangements for Mr. Zhang's removal.

72.     Nor did the Respondents give Petitioner notice of the reasons for revocation and opportunity to be heard.

73.    The revocation should be held unlawful and set aside because it was contrary to the agency's constitutional power and not in accordance with the INA and implementing regulations.

FOURTH CLAIM FOR RELIEF
Violation of the Administrative Procedure Act

74.    Mr. Zhang realleges all paragraphs above as if fully set forth here.

75.    Under the APA, a court shall "hold unlawful and set aside agency action [. . .] found to be arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

76.    Respondents ' revocation of Mr. Zhang's OSUP was arbitrary and capricious because it violated statute, regulation, and the Constitution, as described above.

77.    An agency decision that "runs counter to the evidence before the agency" is also arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

78.    Respondents Genalo and Noem's decision to revoke Mr. Zhang's OSUP ran counter to the evidence before the agency that he would comply with a demand to appear for removal without detention. Petitioner has never failed to report as instructed and new facts or changed circumstances suggest he would.

79.    The revocation also "failed to consider important aspects of the problem" before Genalo and Noem, making it arbitrary and capricious for multiple other reasons. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1910 (2020).

80. Respondents failed to consider the serious constitutional concerns raised by revoking Mr. Zhang's OSUP without notice and opportunity to respond.

81. Respondents failed to consider the increased administrative burden to the agency caused by revoking the order of supervision of Mr. Zhang, who is neither a flight risk nor a danger to the community and for whom the agency does not have travel documents needed to effectuate removal,, including financial and administrative costs incurred by the agency due to unnecessary detention.

82. Respondents failed to consider reasonable alternatives to revoking Mr. Zhang's order of supervision that were before the agency, such as continuing release under the OSUP and scheduling a future time and date to appear for removal. This alternative would vindicate the government's interests in effectuating a removal order and save it the expense of detention not needed to guarantee Mr. Zhang's appearance.

83. For these and other reasons, Respondents' revocation of Mr. Zhang's order of supervision was arbitrary and capricious and should be held unlawful and set aside.

<u>FIFTH CLAIM FOR RELIEF</u>
Violation of the Administrative Procedure Act

84. Mr. Zhang realleges all paragraphs above as if fully set forth here.

85. Under the APA, a court shall "hold unlawful and set aside agency action [. . .] found to be [. . .] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

86.    "An agency [. . .] literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022) (internal citations omitted).

87.    8 U.S.C. § 1231(a)(6) only authorizes detention past the 90-day removal period for a person who is found to be a danger to the community, unlikely to comply with a removal order, or whose removal order is on certain grounds specified in the statute. Even then, if removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6). In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 699-700.

88.    The regulations that purport to give Respondents authority to revoke an order of supervision on grounds other than those listed § 1231(a)(6) are ultra vires and in excess of statutory authority because "[r]egulations cannot circumvent the plain text of the statute." *You v. Nielsen*, 321 F. Supp. 3d. 451, 463 (S.D.N.Y. 2018)

89.    Respondents' revocation of Mr. Zhang's order of supervision was based on ultra vires regulations. So it was in excess of statutory authority and should be held unlawful and set aside.

## SIXTH CLAIM FOR RELIEF
### Ultra Vires Action

90.    Mr. Zhang realleges all paragraphs above as if fully set forth here.

91.    There is no statute, constitutional provision, or other source of law that authorizes Respondents to detain Mr. Zhang.

92.    Mr. Zhang has a non-statutory right of action to declare unlawful, set aside, and enjoin Respondents' ultra vires actions.


## SEVENTH CLAIM FOR RELIF
### Violation of the *Accardi* Doctrine

93.    Mr. Zhang realleges all paragraphs above as if fully set forth here.

94.    Under the *Accardi* doctrine, the Court should set aside agency action that violated agency procedures, rules, or instructions. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 ("If petitioner can prove the allegation [that agency failed to follow its rules in a hearing] he should receive a new hearing").

95.    Respondents violated agency regulations governing who and upon what findings it may properly revoke an order of supervision when it revoked Mr. Zhang's OSUP. "As a result, this Court cannot conclude that [the revoking officer] had the authority to revoke release" and Mr. Zhang "is entitled to release on that basis alone." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 162 (citing *Rombot v. Moniz*, 296 F. Supp. 3d 386, 386-89); *see also, e.g., Zhu v. Genalo*, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025); *M.S.L. v. Bostock*, 2025 WL 2430267 (D. Or. Aug. 21, 2025) (releasing habeas petitioner where where revocation of an ICE order of supervision was ordered by someone without regulatory authority to do so).

96.     Under *Accardi*, Respondents' revocation of the order of supervision should be set aside for violating agency procedures, rules, or instructions.

PRAYER FOR RELIEF

WHEREFORE, Petitioner requests that this Court:

(1)     Assume jurisdiction over this matter;

(2)     Enjoin Petitioner's removal or transfer outside the jurisdiction of this Court and the United States pending adjudication of this Petition;

(3)     Declare Petitioner's ongoing prolonged detention by Respondents to be unconstitutional and a violation of the INA, its implementing regulations, the APA, and the *Accardi* doctrine;

(4)     Order Petitioner's immediate release;

(5)     Award Petitioner his costs and reasonable attorney fees; and

(6)     Order such other relief as this Court may deem just and proper.

Respectfully submitted,

Dated: New York, New York
      October 23, 2025

/s/ Edgar Loy Fankbonner
EDGAR LOY FANKBONNER
The Law Office of
Edgar Loy Fankbonner, P.C.
1120 Ave. of the Americas
Suite 4149
New York, New York 10036
Tel.: (212) 871-1810
E-Mail: attorney@edgarloy.com
*Attorney for Petitioner*

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I submit this verification on behalf of Petitioner because I am Petitioner's attorney. I have discussed with Petitioner the events described in the Petition and I am familiar with his immigration history and the filings therein. On this basis, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge and upon information and belief.

Dated:  New York, New York
   October 23, 2025           /s/ Edgar Loy Fankbonner
                      *Attorney for Petitioner*